5th Circuit, we have one case on our docket this afternoon. We will now call case number 24-60395, Republican National Committee v. Wetzel. Mr. Woodfin. May it please the Court, Connor Woodfin for the Republican Party Appellants. The original public meaning of Election Day is the day that ballots are received by election officials. The defendants suggest that the meaning of Election Day is a state. In Mississippi, it means the day for postmarking a ballot. In other states, like Nevada and New Jersey, you don't even need a postmark. But that's not how courts interpret statutes. The meaning of Election Day is not up to the subjective views of each state. Instead, text and history tell us what those words mean. And historical practice is especially important when applying words like election that are rich with historical meaning. For decades after Congress established the uniform National Election Day, those words meant the day that ballots are received by election officials. That remains the public meaning today. Counsel, what do you do with early voting? So this court upheld early voting in Bowmer. Other courts have addressed it. Our theory and our interpretation of the history has no problems with early voting. Both absentee voting and early voting have a long historical pedigree in this country, and so they are a part of the original public meaning of what it means to hold an election on a particular day. But those ballots are cast and received not on a uniform Election Day, if you understand day to mean a 24-hour period that's the first Tuesday after the first Monday in November. Right, and this is where I think both history and precedent are helpful. So first I'll go take those in reverse. Precedent foster discusses the meaning of the election as the final selection of officers. Dictionaries also use that term, and so that's why the final selection is the final day that ballots are to be received by election officials. So voters relinquishing those ballots or casting those ballots before Election Day doesn't present that same problem. But it's also supported by history. So during the Civil War, voters would, many states set up proxy voting where voters would give their ballots to a third party, much like the U.S. Postal Service, and then that third party was responsible for taking the ballot back to the home jurisdiction and depositing it with the proper election officials on or before Election Day. And so that's why we think early voting is still consistent with the original public meaning of those words. And if I may, I'd like to back up to the text just because that's, you know, a good starting point before we get into the history. And here we think the dictionary definitions of election are helpful for setting guide rails for what that word means, and they're most helpful for understanding how the defendants are misusing the term election. So when the defendants use the word election in their brief, they're really using it as a verb. They mean the moment in time that a voter makes her individual election on a ballot. But when Congress uses the word in election and refers to Election Day or the day for the election, that's not what it means. The other dictionary definitions that we cite refer to election as a process, and that more accurately describes what the states are doing. They are holding an election, not allowing vote. The state holding an election does not refer to the same thing as an individual voter making an election on a ballot. And this misunderstanding by the defendants leads them to a false premise where they say that election receipt or receipt of ballots has nothing to do with holding an election. But if you understand election as a process, then it makes no sense to say that a state conducting an election has nothing to do with ballot receipt. Next, history. Let's stick with text for a moment. So if I understand, if nothing else, the federal rule that we have to enforce is election, whatever that is, has to happen on a particular day and just that one day. Would you agree with that or am I wrong about that? That's correct. And we think this is where history comes into play, because the text doesn't tell you what exactly, when an election is consummated or what the precise moment must take place on that day. But historical practice fills in the substance of what it means to hold an election on a particular day. I guess the reason I asked my question deliberately that way is, under this system, under any absentee ballot system, the ballots are received by the state or the government on different days. So does that tell us, and Congress obviously embraces absentee balloting, right? So at a minimum, does that tell us that's not what the election is? Because by definition, we're receiving ballots on different days, so that can't be the uniform election day. It must be some other day. So again, this is where we think Foster is helpful, and some of the other dictionary definitions discussing election as a final selection. The election refers to the final moment. It refers to the consummation of an election, the joint action of both voters and election officials, meant to make that final selection. So that's why, when talking about the election, it's not so much ... I thought you were saying, though, that what makes the election is the receipt of the ballots, not the counting of the ballots. Or maybe, I may have misheard you. That's correct. Counting of the ballots? That's, no, no, no. It's ballot receipt. You have me correct there. The difference is ... What do you do with the fact that, I believe, ballots are regularly counted past midnight, just because elections are closed, or they don't have the manpower? Right. So the counting of ballots is just an administrative process. That's not the combined actions of voters and officials. What we're referring to must take place on election day is the final receipt of ballots. But again, isn't it weird, though, that the receipt of the ballots happens on multiple days? That's why I was asking the question I did. Yes, and that's built into the original public meaning of election. So this has been true. Since Congress enacted election day, election officials received ballots before the day of the election. But election day was always the cutoff for the final receipt of absentee ballots. And, I mean, this is just, looking to this historical practice, this is just how courts interpret these types of statutes that go back this, you know, a long time and, you know, are rich with historic meaning. This is corner post on the meaning of a cruise in the APA. This is Wisconsin Central on the meaning of money and the Railroad Tax Retirement Act. Trump v. Y on the meaning of suspend in the INA. And so the historical practice, particularly the Civil War era practice, is especially relevant in understanding when ballot receipt cuts off the day for the election. And here, you know, the defendants don't cite any pre-enactment history because none of it supports their position. Ballot receipt was always coincided with ballot casting, um, during, you know, the early days of the founding. And do I understand correctly what's, what I think you say is unique about this case is ballots are not only received after election day, they can be changed somehow? Like, you can, what, what, can you tell, talk to me about this? I, so I, I think you're, You can mail in before, You're referring to the, But they can be pulled back. Yeah, I think changed is not the word I would use, but the, the Postal Service does allow ballots to be recalled. Um, we see no reason, uh, we, we've seen no evidence that that wouldn't apply to ballots. Um, as far as we read the U.S. Postal Regs, that still allows, Are you aware that that happens? I'm just curious. Uh, no, I'm, I'm not aware whether that happens and, and, But at least in theory, somebody could mail a ballot the day before the election and then the day after the election change their mind and have the ballot canceled. I assume they can't re-vote, but they can simply not vote. I assume they can't cast another ballot or fill out another ballot, but, but to be clear, um, even if the Postal Service Regs were different, our argument does not turn on that. It's still about the receipt of ballots by the proper election officials on election day. And it's true that during the Civil War, um, every state required absent, required ballots to be received by election officials on election day. Now the defendants don't really dispute that as a historical claim. Um, the United States and the DNC do in their amicus briefs, but still every example that they provide, Pennsylvania, Nevada, Rhode Island, they do not dispute ballots on election day by those who are conducting the election. And U.S. postal workers don't conduct an election in any sense of that term. They're intermediaries transporting ballots as they do any other piece of mail. Um, they're not conducting an election. And so under the original public meaning of what it means to hold an election and end an election by a particular day, uh, they don't, they don't satisfy the criteria. Um, and, you know, finally for, as far as post-Civil War practice goes, I mean, here we're talking about a handful of states over the course of the early 20th century that are passing and repealing post-election deadlines. Um, you know, I, I don't read the defendants as really suggest that this is great evidence of the original public meaning of the election day statutes. Their briefs start to shade into arguments about congressional acquiescence. Um, but you know, even if, uh, you know, these dates are relevant at most, we're talking about a handful of states 75 years after Congress enacted the election day statutes. Um, that's not great evidence of what the law means today. Counselor, I know you're about out of time, but I'll ask you a question anyway. What, what exactly is the relief you're asking this panel to do? And if it is remand, how does that not run into the Purcell principle? Right. So the relief we're requesting is to reverse the judgment on the merits and then to remand back to the district court. The reason that doesn't implicate Purcell for you is because you would not be issuing any injunction. So we're not, we're not asking you to enjoin. How would it help you? I'm sorry. Would it help you, your clients? So we still, we still think that expedited relief, uh, from this court, an expedited opinion is appropriate. Um, this, the plaintiffs and the secretary agreed that this appeal was appropriate for, for expedition. Um, we continue to believe that it's, it's important to resolve this case before the election. So we would still request, you know, an expedited decision, but, um, we expedited the case and there's no doubt we think it's, it's worthy of expedition. If you were to win and we send it back, I guess I'm, I'm asking, what's the end game for you, for your client? Right. So at that point it does depend on, you know, when the opinion comes out, when the mandate issues, um, but that would be, uh, you know, we would hope that there are lots of options on the table. Um, one option would be then moving for judgment in the district court, uh, to enter relief. And then Purcell would only kick in if we move for that judgment before the 2024 election, and then specifically requested that it apply to the 24 election. And then that would be when Purcell arguments. So your point is the Purcell question's not before us. It, it, it presumably is in the case. It's not before this court. We are getting awfully close, but your point is it doesn't need to be decided here. The district court can faithfully apply Purcell on remand if we get to that point, hypothetically. That's correct. Thank you. You have reserved three minutes. Mr. Noble. Good afternoon, Your Honor. May it please the Court. Russell Noble, Senior Counsel, Judicial Watch on behalf of the Libertarian Party of Mississippi. Uh, this case raises Foster's unanswered question. What is the combined actions of voters and officials that constitutes an election under the Election Day statutes? We submit that election occurs on Election Day when the final ballot is received by officials for three short reasons. The first reason is that only our definition accounts for the combined actions of voters and officials, which is, which satisfies Foster's requirement. Receipt is a critical act, uh, of the officials, unlike registration, distribution of ballots, and counting, because it is the moment that a voter's choice becomes made known to elected officials and becomes irrevocable. It is final at that point. The second reason was I wrong that the mail could be canceled or as a technical matter, you mail it the day before election. It doesn't arrive. You can recall your ballot as best we understand it under the election regulations. I don't know that you can submit a new vote in, but canceling your ballot is technically changing your vote. I don't have evidence that that actually occurs, but that is the way the rules read. And if their argument is that it's out of their control, there's a host of federal cases out there that saying that when it's mailed, if the Postal Service is considered the agent of the sender. So, but is that your theory that under Mississippi law, votes can be cast or rescinded after the official Election Day? Our theories, our view is our theory survives regardless of that reg. It's a rebuttal to their arguments that it's final, because we don't, we believe as a matter of law, in fact, it's not final. But we believe receipt is required regardless, because of the history and the text of the statutes. With respect to the second reason is the original public meaning of the day of election is at the time of enactment meant the day that voters expressed their choice and made it known to officials. That is receipt. That is what happened in VIVA voice voting, and that's what happened in ticket voting. Nothing mattered until they opted in the box, and then that didn't change when America adopted the Australian ballot beginning in 1890. And the third reason is the actual text of the statute. 3 U.S.C. 1 says that electors shall be appointed on Election Day. Under Mississippi's law, it, it must wait five business days for voters choices and the final selections to roll in before it can appoint people. Now, as a matter of practice, Mississippi does extend canvassing days after election. We don't dispute that, but that's not required by law, and if the Speaker of the House called up Mississippi on Wednesday after election, they said, who did you appoint or who did you nominate to be your electors? Mississippi could do it, but under the current regime, they would have to tell the Speaker to wait five days before we can give you an answer. That is modifying and inconsistent with the original public meaning of the Election Day. Appellees here attempt to fill gaps and argue preemption standards that have been rejected by intertribal in the Tenth Circuit. Counsel, before we get to preemption, can you help me understand what seems like a tension with you and your, and your co-counsel? He told us that, Mr. Woodfin told us, that the act of counting the ballots is different and separate, and that can happen five days, five weeks. Bush v. Gore can happen, what, in December after the election. So, is your position that recounts and ballot counting and, you know, ballot, looking at hanging chads and all the rest of that after Election Day, is that preempted by 3 U.S.C. Section 1? No, Your Honor. Because what if the Speaker of the House called the Secretary of State in Florida and said, who are your electors, Bush or Gore? They would say, we, they wouldn't be able to give them the answer, but they would still be calculating. And we described this in our reply brief. If you get everyone in a room and they cast a vote and they put it in a box, that decision is made inside that box. You don't know the results yet, but that decision is in that box. You, as it stands now, you have to wait five more days for decisions to come into that box, and you can't make that decision. So, the complexities and the difficulties in certifying and calculating the election can slow down the process, but that is not the, that is not when an election occurs. An election occurs when a voter, a voter expresses their choice. They make it known and communicate it to elected, election officials by a given time, and the given time is on or before Election Day. That's what reconciles the absentee voting and early voting, because they can do it before, but they can't extend it after. Louisiana could not require ballots to be in five days before election, and Mississippi can't allow ballots to come in five days after election, even if it's just 1% of the vote. DiApoli's definitions focus exclusively on the unilateral actions of marking a ballot and mailing it, mailing it. Louisiana can't allow ballots to come in five days before. We don't mean that literally, because that literally happens, right? Under Foster, they can't mandate that 100% of ballots be in five days before. You can't cut off the... You can't cut off five days before, yeah. I apologize, I'm... Alright, we all agree it's a multi-day process, right? Correct, and we believe it's on or before. They can cast and make known their communication and their vote up until that point. It's final, but the last, the last voter to choose has to come in by Election Day at midnight. We're fighting over what's the consummation date. Correct, and when does consummation need to end, really, to be honest? When does, when does the act of consummation need to end? Indeed, under the State Intervenors rubric, receipt isn't required to have an election occur. That can't be required. They further suggest that official actions referenced in Foster are pre-election activities like registering voters and distributing ballots. We know that's not true for two reasons. First of all, neither registration or distributing ballots is part of the process of making known a voter's choice. The second reason, and this is, and this is objectively true, is that neither were common practice in 1845 and 1872, so the public would not have understood registration or ballot distribution to be part of the original public meeting. Registration was not widespread in the 19th century, and in fact, it's still not required in every state in America today. North Dakota does not have registration. They have elections every two years. Under that interpretation, they would not be having an election because they would not have a combined action. With respect to ballot distribution, I think this is sort of lost in all the historical conversation, but the Australian ballot was adopted in 1890. That's the point that election officials started distributing ballots. Up until that point, it was voice vote. It was people showing up with a handwritten paper, I want to Abraham Lincoln, or people getting tickets, and tickets were all widely disseminated by electioneers and newspapers outside the poll site. So, the election officials were not distributing ballots in 1845 and 1872. Those two acts cannot be the combined actions. Is that, is that also your argument with respect to counting? Because your co-counsel said something like, well, counting is a purely administrative part of this, so it's not really part of the election. Of course, I have a feeling the other side is going to say, oh no, so, so is receipt, right? So, how can we distinguish those two actions? Well, we think receipt is different because that's when it makes the ballot a final and unknown. You know, as I mentioned, an election still occurs if you have the votes all in a box. You may not know the outcome yet, but the election is concluded, and there is a result in there. You just got to get it out and count it. And... But does history also help us draw that distinction between receipt and counting? Well, I mean, I mean, under the, under the Civil War era statutes, they, you know, they made sure that the ballots were received by Election Day. They went so far as to set up poll sites in there. They did not mandate they be counted by Election Day, so we believe it is. Whether that's been, like, expressly provided under the Benton Book of Voting in the field is hard to say. I want to just talk, like, the voter, most of their arguments about the definition of election turns on voters marking a ballot or mailing, but a voter's choice must be lawfully made known and communicated under the Borland-Hildreth case and cannot be revoked. A voter marking his ballots is just a communication of their preference. Even mailing it is, is part of the process, but memorializing your vote does not mean it's a final choice, and there is a term for that in election administration called spoiled ballots. That's the process where a voter marks a ballot and then changes his or her mind or whatever is unable to do it, and, uh, and so it's, it's, it's so pervasive, pervasive that there is a term in, in election administration. Thank you. You've reserved three minutes. Mr. Stewart, since I think we extended Mr. Woodfin's time about a minute, let's go ahead and add one more minute here. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Mississippi Secretary of State. The district court was correct to uphold Mississippi's ballot receipt law. This should, this Court should affirm. I want to emphasize two main points. The first is about text and historical meaning. The second is sort of a broader, uh, discussion about, uh, constitutional structure that I think ties together a number of the important points in this case. On text, there's something striking about this case. You look at dictionary definitions, you look at Supreme Court case law definitions, you look at on-point judicial decisions from the Supreme Court and this Court. All of those squarely and strongly support the state's law and the district court's opinion. They say things like, an election is the final choice. It's the act of choosing. It's selecting. It's the expression of choice. It's the final selection. All fit very, very well with Mississippi's law under which somebody marking and submitting a ballot as required by law, casting a ballot, uh, is the conclusion and consummation of the final choice. It's also very well supported in pages, uh, 1207 and 1208 of the Supreme Court's decision in RNC versus DNC, where the court equated, um, mailing with casting and voting. Um, again, my friends on the other side have not addressed or respond to that. And, you know, just in response to this idea of, you might, my friends say that ballot receipt is the definitive election day act. That is quite a statement for a party that has been unable to locate a single definition that mentions ballot receipt. I've just never seen a plain text case prevail with that kind of an absence. And it's especially striking here. And, you know, my friends say, you know, kind of push back on our position. They say, Oh, well, you know, the state is just kind of advocating this view where it's just kind of the sovereign unilateral expression of subjective choice. We're very much not. We're very comfortable with Foster on combined actions. You know, well, what are Mr Stewart? Um, so I'm looking at Foster, the combined actions of voters and officials. So what is the combined action of voters and officials here on your theory? Sure. Sure. Judge Duncan, it's, um, the election officials providing a ballot and a means to cast it. I mean, combined actions. They don't say simultaneous actions. They don't have this kind of idea where it is the moment where the last voter hands her ballot in and the official receives it. And when their hands are both on it, that is the election. So the combined action is the provision of a ballot by state law, plus the voter making that final choice by marking the ballot and submitting it as required by law. You're okay. So So let me ask you this is I read the law. Maybe you can educate me about the law that subsection B of the law here is talking about a different kind of absentee choice. It's where the absentee elector appears in person in the office of the registrar that that's assume that's like a handoff or an early handoff of in person absentee in person absentee. You gotta do that early. You gotta do that before Election Day. Now, what if the state law were Look, you've made your choice. You've sealed the ballot. You can hand it off, but you can hand it off five days after, and we'll provide some sort of affidavit or some sort of seal to make sure that you're not changing it. But you can hand it off five days after same result here. I think that would still be a problem because the final selection, final choice needs to be made by the election day to that. That is the pivotal thing. The making of the choice. But you've Yeah, but you've you've marked it. You've let's say you've sealed it. There's there's no way you can. I mean, we could tell if you tampered with it and you just hand it off five days after the election day the way it's same as under B, except it's not 12 noon Saturday, immediately proceeding, but three days after. So that is that different in your view? I think I think yes. I mean, I certainly don't think the court would need to endorse that to endorse our law. No, no, I know it's a hypo. Right? Well, I mean, I think you have that combined action, Judge Duncan, where somebody is submitting, casting the ballot under the means prescribed by state law. I mean, that's the typical way of casting about. I mean, this gets back to RNC versus DNC, where the court is saying, Look, if you're allowing people to mail their ballot after Election Day, that fundamentally changes the nature of the election day. There's something about mailing a ballot that is casting it that is voting and things beyond that. You know, if you don't submit it until later, that is a different sort of It can't be the mailing, just so I understand your theory. It can't be the mailing that is the combined action of the official and the voter because the mailing and doesn't involve state election officials. Well, it does in that it is the spot, the electorally sponsored way to submit the ballot. I mean, again, combined actions you're on. I think if, um, the point that it's getting is that it's not sort of like a somebody is in in his home. He rips off a piece of notebook paper, says I vote for so and so for president and throws it out the window. I mean, that is just kind of the sovereign person, like making a subjective expression of choice. We're saying, you know, you have to do it is required by state law. It's not just as my friend sort of puts our position, I think a little unfairly, you know, marking and getting rid of ballots. It's no, you have to submit it in accordance with state law, which again, this is an area where states gets to sort of define in the first instance. And I think this actually dovetails, I think, nicely into the historical discussion, which gets to, I think, an important point about meaning here, which is, you know, my friends have this problem, as I've said, with the text itself and the lack of mention or kind of hinting at ballot receipt. So they point to history, which, you know, is fair, but their basic problem is this. The plaintiffs never point to anything to show, uh, that the federal election day statutes actually barred post election day receipt. And the key thing you'd want to look for is something that showed that there was a state somewhere at some time that considered and rejected post election day ballot receipt because they thought the federal election day statutes prohibited it. We just, we just don't have that. We instead have a situation where, you know, and I think Judge Justice Kavanaugh's concurring opinion in the Wisconsin state legislature brings us across quite well at pages 32, 34 and 35, where Justice Kavanaugh says, look, you know, the states under our system of federalism, which is particularly strong in the election context, get to move first here. They take different approaches. They have very strong views to take different approaches, but these are policy choices about, you know, some of these things related to ballots. You know, I, I very much appreciate that, um, very good people, very reasonable people, great states, um, have a very different view about post election day ballot receipt. I respect that, but you know, this is not just an area where we have kind of federalism. Elections and voting is an unusually powerful instance of federalism. I mean, this is an area where the states are generally first movers. They get to kind of muddle along, make some potentially things, you know, bad choices, and eventually either the federal government or the people themselves come in. And we've seen that many, many times. We just have not seen Congress do that here. And I think, you know, we can all, I think, very comfortably say like, hey, you know, we have our personal views about the goodness of this policy, but the states can adopt policies that we might think are a bad idea. I mean, again, look at how long, it took over 50 years to get a uniform presidential election day. It took over 80 years to get a uniform representative election day. I mean, the first of those especially strikes me as kind of crazy, but again, states were allowed to do that. Does it matter to your theory whether the handoff, the pre-election day handoff of the ballot is to a government official or to a, just a third party private carrier? The pre-election day handoff, um... Meaning I marked my ballot, it's an absentee ballot. I'm going to hand it off to somebody for delivery up to five days after the election. Does it matter that it's U.S., U.S. Post Office? Could it be FedEx? I don't know what the statute says about that. I'm not sure that the federal election day statutes speak to that instance, Your Honor. I mean, I think it would raise other questions about is this form of deciding how to allow a ballot to be cast, does it run into other problems? I mean, are there, I mean, some are policy problems, surely, you know, election security risks, election integrity risks. Uh, you know, I'm not sure if you end up having kind of other problems that run afoul of other things. But again, I mean, this is an area where kind of states get to kind of go first and saying this is what casting is. I mean, here... Does the Mississippi law, I'm having trouble reading it or understanding it. Does it, does it exclude UPS and FedEx? Um, common carrier is allowed, Your Honor, is my, my understanding. And what it's excluding there is the electronically UOCAVA ballots. Okay. You can do it through FedEx or UPS. Right, Your Honor. That's, that's my understanding. UPS... The theory is that you get a postmark. Right, right. That's right, Your Honor. Mr. Stewart, do you dispute the rebuttal point about canceling a ballot once it's been mailed? We definitely do not concede that point at all. I'm glad you raised it, Judge Oldham. Um, you know, I have to emphasize kind of a factual point and a legal point here is one is that is a factual claim that my friends have raised for the first time on their appellate reply briefs. They agreed that this case could go off on cross motions for summary judgment. They never presented any evidence that that could happen, that it has ever happened. Um, you know, I do have to respectfully fault my friends for raising that for the first time here. It would have been probably too late to raise it in their district court reply briefs. That's why you hear, heard my friends thing like, say things like, I assume, I assume I don't have evidence for that. So that is clearly barred as a factual matter here and we definitely don't concede it. The other point is Foster at page 71, Your Honor, when the court was defining, giving a combined actions definition, um, it parenthetically noted, you know, this is about combined actions meant to make a final selection. Then it noted 2 U.S.C. 8, which allows for runoffs. And that's sort of a similar sort of situation where you have this like outlier theoretical possibility that, you know, there could be further kind of proceedings. But that didn't affect the fact that, you know, the main normal course is a final selection. I mean, the RNC, even at page 13 of its reply brief, tries to rebut one of the defendant's points by saying, look, we look to the normal circumstances of an election. So I think that is very much forfeited, very much an improper argument here that we don't concede. And a state, you know, you make a lot of the state being first movers and it has to be all be done by election day. Could a state, just like we do with, um, in presidential primaries where everyone's trying to have theirs first, could a state decide that they're going to have their election on Monday before the Tuesday? Monday before the Tuesday. I mean, I think if I understand the hypothetical appreciated correctly, Your Honor, I think Foster would knock that out. I mean, you just I mean, that seems to be suggesting to me that there's something conclusive happening and nothing happening on the election day itself. So I think that would be an issue. So could a state announce its absentee or early voting tallies before election day? As far as the election day statutes are concerned, Your Honor, um, I can't immediately think of a textual bar to that. I'm not sure if there's something else in there, but I do think it is kind of a nice point back to the federalism point, Your Honor. In addition to these kind of comprehensive statutes, you know, B. R. A. N. B. R. A. The ones the court knows of. I mean, I think it's notable that of the 17 amendments since the Bill of Rights, most of them address elections or voting again. This is an area where states have done things that we would think are not just bad ideas, but just fundamentally unjust and how they've administered voting. And certainly some reasonable people could think that about this. But until we get some text, some words from Congress or from the people themselves, states are free to do this, including announcing their early vote tallies. Um, I can't. I cannot think of an election day bar. I mean, I take I take your point that, like, you know, we're looking for text, but there is text in three U. S. C. Section one, and it does say election day. And so the whole question that we're having is that the parties are asking us to come up with a legal theory to explain how to reconcile that in this in this particular challenge. And both sides are very different competing theories, and I'm trying to get my arms around what the state of Mississippi thinks. And I think maybe Foster would prohibit saying you're not allowed to vote on Tuesday, but it wouldn't prohibit the state of Mississippi from saying, Look, we have a six month long early voting window, right? As soon as as soon as our primaries are over in March or whatever, we're just gonna open up. Everyone can vote as early as they want, and we're gonna just have rolling tallies, right? And so on Election Day, if you happen to be, you know, the one person in the state of Mississippi that didn't vote early 99.9% of the precincts are in, and you know the results, right? And I don't see what on your theory. I don't see why that would be a problem. Well, Your Honor, I mean, but we have an out under a theory, which is that, you know, again, Congress could at any time come in and do, and Congress has been very, very active in this space. I mean, the people themselves have been very active in the space by constitutional amendment. I mean, as I've said, there have been a lot of things that I think, you know, many in this room and maybe all in this room would now say are very bad ideas in the electoral kind of related space. And as those have arisen, there's been action. So again, I think that's that's one answer. I mean, we are talking about, um, you know, I think the benefit ours has, I mean, even if it does not solve kind of every conceivable concern in this area, is that it makes sense of the dictionary definitions, the, you know, many years of case law definitions, the holdings in Foster, RNC versus DNC, Bowmer, and also just kind of respects as a textual matter, even early voting, absentee voting, because you don't have conclusive choice until the Election Day. Now I could see, you know, good and strong reasons not to have, you know, that sort of thing. I mean, again, I think it's, you're getting at some points, Judge Oldham, on why I think a lot of people sort of have a bad odor associated with the stretching out of the electoral process. I very much sympathize with that. I mean, you know, a legislature could, you know, our legislature, maybe they'll come to a different view at some point. It's obviously a recent decision for Mississippi, but it all is, I think, very perhaps in some ways uniquely part of the especially compelling federalism story for elections and voting in particular, where states make these choices, they have a lot of discretion, and if Congress or the people themselves think as a whole that those are a bad idea, that they can come in and then act. We ask the court to affirm. I do have, you mentioned the RNC Supreme Court case. Is your point that RNC permits your reading of what triggers the Election Day definition, or that it requires your definition? I'd say... I'm looking at that decision. I'm not, I want to make sure I understand your Sure, Your Honor. So, um, what the court said is that allowing, um, absentee votes to be mailed after Election Day, the mailing to be done after Election Day would fundamentally... That would be fundamental. Yeah. Fundamentally alter the nature of the election by allowing voting after Election Day. So it's page 1207 and 1208 to drive those home. Okay. So that, that means that certainly that would be a problem if Mississippi were to say, you know what, you can go ahead and vote the day after. That doesn't necessarily preclude the theory that, uh, voting before, but not receiving till after would also be a problem. I, I suppose this language is suggestive. I'll give you that.  I just want to make sure I understand the scope of your argument. Right. Well, I, I mean, I, I think it's, you know, it's the intuition behind that Judge Ho is the idea that there, I mean, the court's contemplating that ballots are going to be received after Election Day. Like that is, you know, they understand that happens and, you know, they're not remarking on that. They're remarking on, you know, we can't have all that didn't bark is sort of what you're saying. Yeah. It didn't seem to worry about that path. What worried them was the, the, the casting the vote after you're casting the vote after is the, the, what would fundamentally change things. And again, I mean, it was very obvious and clear that votes were going to be received after Election Day. And again, you know, no comment about that. You know, I don't want to overstate it, but I do want to, like the court was very clear about what would fundamentally alter the election and it's not what Mississippi has done. Thank you, Your Honor. Mr. Dodge. Good afternoon, Your Honors, and may it please the court. Christopher Dodge on behalf of the interveners. Um, I'd like to pick up exactly where Mr. Stewart left off on this federalism issue. Um, my friend, Mr. Woodfin, suggested that the defendants in this case have put forward an argument about congressional acquiescence, and I don't think that's quite right. In fact, what we have here is something much stronger, which is Congress, every single time it has legislated in the field of ballot deadlines, has acknowledged, endorsed, and oftentimes built into federal statute these state laws. So this is not merely an instance of congressional tolerance or awareness. It is, in fact, an instance of repeated congressional endorsement. And I'll give the court a couple examples. So during the Second World War, Congress creates a federal war ballot for service members serving overseas. Because, as my friend Mr. Stewart explained, the Election Day statutes do not create a default deadline for ballots, because they don't address the issue of receipt. Congress, for the first time, has to say, this federal only war ballot must be received by Election Day. But, in the very same statute, with full knowledge that at that time, eight or nine states had these post-Election Day receipt deadlines, Congress said that service members could still vote, quote, in accordance with the law of their state. Meaning, with the benefit of these enlarged time periods for receipt. And it's, it's even more than that, because two years later, ahead of the 1944 presidential election, Congress amends that law. And it doesn't simply maintain this default federal Election Day receipt deadline. It actually amends the law to embrace these state laws and to build them into federal statute. So that law, which is 78 Public Law 277, says that the federal only war ballot can be returned, quote, up to the time for the receipt of absentee ballots permitted by state laws. So there it is expressly saying, we are aware that there are state laws on this issue. Federal law has not addressed this issue. State laws are the presumptive area of governance when it comes to the timing of receipt. And if you are from a state where your state legislature has chosen to enlarge the relevant time period for receipt, you get the benefit of that law. And at the same time, it reserved the option for those service members to vote according to the laws of their state. Meaning, with the benefit of these state laws. Counsel, I read this with earnest in your briefing, but I don't understand how it really helps you. Why isn't the negative implication, which is powerfully undermining of your point, I mean, the fact that Congress saw a need to go out and embrace this textually for service members voting under different statutes would seem to suggest that they did not do the same for just general absentee ballots. But very tellingly, it did it only for the federal only war ballot, which was a ballot service members could choose to use in lieu of their own state absentee ballots. In both laws, the 42 law and the 44 law, Congress was very clear saying if that service member overseas chooses to cast their state ballot, state law governs, including receipt deadlines. The 44 amendment, which is at 58 statute 136, says that expressly. And so while at the same time preserving the right of soldiers to simply cast a state absentee ballot in the first instance and to not use this novel temporary federal only war ballot. And we know that 40 years later, Congress does the exact same thing with UOCAVA. They hear testimony at that time that a dozen states have these kinds of laws. And Congress, if it wanted to, could have said, okay, well, you know, we're not a fan of these. We're going to cut them off. It does the exact opposite. UOCAVA is littered with references to state law. In fact, the federal UOCAVA write-in ballot does not count if a state absentee ballot first makes it by the deadline under state law. So that is yet another endorsement of these state laws. It's not actually resolve this question conclusively. Is, in the first instance, a realm for state legislatures? And I think this leads to a second point, which Don't we, just to allude to your discussion with Judge Oldham, don't we still have to ask the separate question, do those federal statutes reflect a preexisting practice or are sort of a derogation of freedom? I think they do, Your Honor. I'm not saying there's an answer. I'm saying that is the question we have to ask, right? I think it's a fair question. I think it's important. You're saying it's reflecting. Absolutely, because as a matter of statutory construction, when Congress legislates in the same field, you know, it's the related statutes canon. When they legislate in the same field, there is a judicial presumption that they act with awareness of relevant laws on the same topic. And, you know, we know that in UOCAVA, because in the House report, Congress went even further. Not only is the statutory text littered with references to state law, but in the House report 99-765, the House says several states accept absentee ballots, particularly those from overseas, for a specified number of days after election day. And the House then praised these laws, saying that they aided in protecting the voting rights of military and overseas members. And I guess just to give you some cases on that point, Judge Ho, you know, Justice Scalia in the United States v. Fausto says that, you know, in trying to reconcile various statutes on the same point, the implications of a latter statute may be altered by the — or the implications of a statute may be altered by the implications of a later statute. That's 484 U.S. at 453. Likewise, in FDA v. Brown and Williams & Co., the Court said, at the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape and focus those meanings. That's what you have here when you have not only dozens and dozens of state legislatures over a century, not only multiple other Federal courts, but Congress at various intervals in time saying, we know there is no law, no Federal law on this issue. We know this is the realm of state legislature. So we are going to expressly incorporate them at various points. Counsel, can the state say, look, we're going to be having — we're going to be receiving ballots and counting ballots five days after the election, so we're just going to open that to everybody? I'm not sure I follow the question. But whenever. Like, if you want to vote five days late, that's totally fine. Because we're going to have state officials in the — because we have to deal with UOCAVA, HAVA. There's a bunch of Federal statutes that are going to authorize post-election day ballot receipt and ballot counting. So we're just going to open our doors and make sure that everybody is treated equally. I agree with what Mr. Stewart said, which is that all the contemporaneous evidence, when it comes to the election day statutes, the dictionaries, the Supreme Court's decision in Newbery, the Supreme Court's decision in Foster, this Court's decision in Boehmer, they all emphasize the public's choice, the choice of electors must be final by election day. That is true — that is equally true for service members, overseas voters, you know, different communities of voters, all voters. That is a uniform rule. And that's really the function of the election day statutes. Getting back to your final question to Mr. Stewart, Judge Oldham, which is that the election day statutes serve as this bright red line. It is an anchor date by which the voter must have made their final selection and by which — and also prior to which the state may not consummate its electoral process. And Mississippi's statute is on all fours with that. It's — the postmarking requirement gives you that bright red line about that anchor date. I see I'm out of time. If the Court has further questions. But please finish. Well, I was just — I think I more or less finished on that. Thank you. Mr. Varelli. I apologize. Did I mispronounce? Varelli? Varelli. Excuse me. Varelli. Thank you. Varelli. Mr. Varelli. It's good to be here. Good afternoon. And may it please the Court, Don Varelli for Amicus DNC. I'd like to use my time to focus on two points. First, I want to go back to the text. And second, I want to follow up on a question Judge Oldham raised earlier about anomalies. With respect to the text, the meaning of the word election, as the Supreme Court said in Newberry, has been the same since the founding to today. And it is the final collective choice of an officer by qualified electors. It's the final collective choice of an officer by qualified electors. So the day of the election is the day on which that final collective choice must be consummated. That is what it means. And our position rests on that meaning. And their position departs dramatically from that meaning. So the text completely favors us. That language, that definition says nothing about the manner in which that final determination must be made. It just must be consummated by election day. In your definition you quoted from Newberry, what work is the word collective doing there? The final collective choice? So what it means is, I think that this is a problem with the way my friends on the other side are approaching it. They want to narrow down that aperture so you're looking at one voter casting one vote and having it be received by the election officials. What final collective choice means is that the process requires that all votes that are going to go into the determination of who holds the office are cast by election day. It doesn't say anything about the manner in which they are cast. That is something that the Constitution delegates expressly to state officials with, of course, federal backstop. And states have made different policy choices about that very thing. Mississippi and 27 other states have said so long as your ballot is postmarked by election day, it is cast. It goes into the final determination. The final determination is made by election day because every vote that goes into the final determination has been cast by election day. And that should not be a surprising thing. The mailbox rule was well established as a matter of contract law in the early 19th century. If you look at stories, treaties on contract law, section 84 from 1844 talks about it being the law in the United States. Supreme Court in a Taylor case, 50 USC, cites the mailbox rule as the prevailing rule of contract law. And what that means in a contract is that when the offeree mails the contract back, it's legally binding at that point. It's a completely familiar concept in law. When you mail your tax payment in, so long as it's postmarked by April 15th, you've paid your taxes on time, even though they arrive after April 15th. This is a policy choice. And I think Justice Kavanaugh's discussion in the Wisconsin opinion respecting denial of stay says it well. States can make different policy choices prioritizing different values here while acting consistently. Now, with respect to, I'd like to address Foster if I could. And I know Judge Duncan, you raised that language in Foster. I want to make a couple of points if I could. First, respectfully, I think the unanimous Supreme Court expressly disclaimed the exact reading that my friends on the other side are advancing. And I'm looking at page 71 where the court says, our decision does not turn on any nicety in isolating precisely what acts a state must cause to be done on the federal election day. Then if one looks at footnote four, it's reiterated where the court says, this case thus does not present the question whether a state must always employ the conventional mechanics of an election. We hold today only that if an election does take place, it may not be consummated prior to the federal election day. So respectfully, my friends are reading way, way, way too much into that combined action language. And as I said, I think it goes back to how tightly you focus the aperture or how broadly you focus. Although in fairness, I agree with you that we need to be very careful about Foster. It does say it has to be as a matter of law before, uh, I'm sorry. Uh, the one, the problem is that it's concluded before the federal election day. That was the problem. Right. And I presume it'd be a problem to conclude as a matter of law after people vote after election day, either in person or in the mail. And those votes count. You have violated you that that's preempted. And Foster makes clear that that's preempted that it comes down to what does it mean to select candidates? Well, that's the debate we're having between the mail-in and I think the constitution expressly delegates to the states the authority to make that choice. So long as the election is consummated in the sense of every vote that goes into determining who holds the office is cast by Mr. Verley. Could the state of Mississippi announce? Yeah, I wanted to address your honor's question about that. It's a good question, but I think the answer is no. And I think the reason is, um, we're talking about, uh, conflict preemption here and the question, and I think there'll be a good case for conflict preemption there because if one looks at the circumstances that led to the enactment of the uniform election day, it was precisely because there weren't uniform election days. And so the results in state a were announced before state B voted. And that was the very problem Congress was trying to address when it enacted this statute. So, and I said, as compared to the historical evidence in which my friends on the other side rely, that's the relevant historical context for interpreting the statutes. I think it would be a serious problem. Now, of course, no state does that. Mississippi doesn't do it. No state does that. But I think it would, there would be a serious preemption issue with respect to that kind of law, but there certainly isn't and can't be with respect to this. And I assume I'm over my time, but if I could just make a point about anomalies, because I do think it kind of seals the deal on the meaning, um, of, uh, the federal election day statutes, your honor raised the question. I mean, I think it's useful here to look precisely at the definition my friends on the other side propose. And this is at page one of the RNC reply brief, uh, and where they propose a clear rule grounded in text and history at the time Congress enacted the election day statutes, the quote day for the election unquote meant the day that ballots were received by election officials. That's their definition. It's right there. I'm, I'm, I'm not characterizing it. You, your honors can read it on page one of the reply. It's obvious that early voting is irreconcilable with that definition. Your honor's question is exactly right. And, and of course this court in Bowman has upheld early voting as consistent with these statutes. It seems to me equally obvious as your honors pointed out that it's inconsistent with absentee voting insofar as those absentee ballots arrive before the day that the particular election day. It was all inconsistent. And I also think, uh, you know, just to be clear, it's inconsistent in the sense that we're, we're obviously extremely pregnant on the notion that we're going to do multi-day voting. That's obviously baked in no matter what we do, multi-day voting is allowed under Bowman if nothing else. I thought their point was, uh, under Foster, the process, whatever you define it as, uh, does have to conclude on election day. And the debate here is whether receiving is the conclusion or the, or the casting that's the conclusion. I'll address your honors question directly, but I do want to make a prefatory point. Please. I think that their argument for the proposition that concluding the election by election day means that states cannot count absentee ballots that arrive after election day derives from this precise definition of, of the meaning of the day of the election. And what I'm saying is the necessary implications as your honors questions have pointed out of the definition from which they derive their rule are completely untenable for the, for the reasons I've described. And it does also call into question post-election practices as Judge Duncan asked a question along those lines and it calls those practices into question too. You know, there's states, some states require, allow ballots to be cured after election day. And of course there's a process after election day of challenging whether ballots are indeed cast by qualified electors or whether there's some reason, fraud or otherwise, why a ballot shouldn't count. All of that happens after election day. And this goes back to the Foster point, the process that the combined actions that I think is quite clear what the court is describing Foster is the entirety of the process. And the entirety of the process is a combined action of state officials, setting the rules, administering the rules and citizens participating in the process that the state has set up. That's what that language in Foster means. And as the court said itself in Foster, it doesn't mean anything more. I'm happy to keep going, but I realize I'm well over my time. And so if the court has any additional questions. Thank you. Thank you. Mr. Woodfin, you've reserved three minutes. And since we went over by about a minute again, we'll give you one more minute. Thank you, Your Honor. Judge Duncan, I'd like to return to a question you asked earlier about the difference between ballot casting or ballot counting and receipt and why one is administrative and not the other. And to give you just a couple maybe historical points to hang your hat on the difference there. First, in field voting, which occurred frequently throughout the union during the Civil War, the soldiers would conduct an election in the field. It would be a full election. They would register the voters. They would reconcile the votes cast with the registration lists. They would reconcile vote challenges. And then they would send the tabulation back to the home jurisdictions. And of course, that would take several days. So that tabulation is an administrative process. And also just to provide you a more specific example, the Rhode Island Constitution of 1854 actually specifically provided for the city of Providence to permit ballot counting for up to two days after the election. But it required every other jurisdiction to count their ballots and announce the results by election day. I'd like to also talk about the word casting. I think my friends on the other side hang their hat on this idea that a ballot must be cast by election day. But that word's a bit dangerous because it assumes the conclusion. Today, we might colloquially refer to casting as when you put your ballot in the mail. But that's not the historical meaning of the term. The Montana Supreme Court's opinion in Maddox is the best authority we found on this. And it discusses that the original public meaning of the word casting was not just relinquishing the ballot to a postal worker or a friend to take the ballot to the ballot box. It was delivering it to the proper election official, the person who is responsible for the ballot as a ballot. U.S. officials are not responsible for the ballots as ballots. They're not election officials in any sense of the term. Do you want to address the RNCVDNC point that the other side made? Yes. So I think this is just an example. A fundamental alteration point. Right. So I think your interpretation of that is correct. So it's an example of a colloquial use of the word casting that's different from the historical use of the word casting. And so that's Maddox looks at Webster's Dictionary from 1931 and says, well, casting meant delivering it to the proper election official. So although in other contexts we might use the word differently today, that doesn't tell you what that word meant. And it certainly doesn't tell you what it means to hold an election on a particular day, which is the word that's at issue here. Because I understood the other side's argument. It's that in RNCVDNC, you had two issues. One is the fact that votes can be cast after Election Day. And the premise, of course, is that they'll be received. Votes will be cast before, but received after. And the only thing that bothered the Supreme Court was the voting after. In that case, the court was not applying through USC-1 or the Election Day statutes. The reason it reversed was because the district court actually entered an injunction that no one asked for. So it was a different situation there. Uh, my friends on the other side also want case law considering and rejecting post-Election Day receipt. And I would love to see that too, but they have provided no evidence that any state allowed post-Election Day receipt. So of course, in the Second Amendment context, you might see these cases pop up because you saw states passing laws that restricted the right to bear arms in some respect. You don't see that at all here. And the goal is to determine the original public meaning of the text. State practice is the best indication of what those words meant, because they're the ones who are conducting the elections. And for 75 years after Congress established the uniform Election Day, you don't see a single state, and they have not provided a single state, that permitted post-Election receipt of ballots. For that reason, we respectfully request you reverse the judgment of the district court. Thank you. Mr. Noble? Did I pronounce that correctly? Nobile. Nobile. Judge Ho. Uh, Russell Noble from Judicial Watch again. I want to do some drive-bys on a couple of things that have been brought up to the court. RNC versus DNC. That is a case about the federal primary. It does not apply to U.S.C. 7, 3 U.S.C. 1, or 2 U.S.C. 1. I'm not saying the court needs to ignore it, but in that context, the Supreme Court was not looking at how the term Election or Election Day was applied in those statutes. It has very little relevance to the actual text of the statute in question here, no more so than a state election would be relevant to the Election Day statutes. I want to address a couple of points because the election law context is difficult. My friends from Mississippi talk a lot about federalism. Federalism issues in the Elections Clause and Electors Clause context are much more reduced, as Justice Scalia noted, in intertribal. This is not a Voting Rights Act context where the courts are applying Voting Rights Act under Section 2 or Section 5 where they're enforcing the 14th or 15th Amendment. Those states get deference more so than they do here, and that's why there's this sort of discontinuity in how you see those. This court heard an en banc argument on Galveston regarding their redistricting about six months ago, maybe a year ago. In that context, the local jurisdictions get some deference, but here, Justice Scalia says they do not, and so the ordinary federalism concerns do not apply. My friends from VetVoice talked about UOCAVA, and I apologize if I don't paraphrase this 100%, but he said every instance that the federal government has recognized, talked about it, they've recognized the ability to receive ballot slate. That's not accurate. The most important thing Congress did in 2009 when it amended the UOCAVA Act, and honestly, my former colleagues at the DOJ don't get this right, they added a 45-day strict deadline for when UOCAVA ballots need to go out. They set that deadline on Election Day. The most important part of that statute, the most important part of the MOVE Act in 2009, the most important part of UOCAVA development since 1986 sets the deadline on Election Day. They set the deadline for in accordance with state laws because states can always revert and require early receipt. If you set it according to Election Day or anything else, you would direct the Department of Defense to basically lose the votes and not return the ballots in time. We don't need a textual conflict. We have a textual conflict. 3 U.S.C. 1 requires them to be inconsistent for that purpose, but there's a myriad of other reasons why it's inconsistent, but that is a clear, direct conflict to the extent the Court still believes such is necessary. We ask that the Court rule in our favor and remand this back to the Southern District of Mississippi so we can have remedial proceedings and decide what issues remain. Thank you, Counsel. The case is submitted and we are adjourned.